UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-477-BR

| | |
|---|---|
| DOUGLAS EVANS and DIANA EVANS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| McKINLEY MEDICAL, L.L.C.; ) | ORDER |
| MOOG INC.; and CURLIN MEDICAL INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the 18 August 2010 motion for summary judgment filed by defendants Moog Inc. ("Moog") and Curlin Medical Inc. ("Curlin"), and on Moog and Curlin's motion to seal. The motions are ripe for disposition.

## I. BACKGROUND

Plaintiff Douglas Evans ("Evans") underwent surgery on his left shoulder on 22 August 2003 at Duke Raleigh Hospital. (Compl. ¶ 5.) During the procedure, a pain pump was implanted into Evans' shoulder. (Id.) The pain pump injected pain relief medication called Marcaine directly into Evans' shoulder joint, which allegedly caused a condition called glenohumeral chondrolysis. (Id. ¶¶ 5, 33.) Evans asserts that as a result of using the pain pump and the accompanying Marcaine, he suffered a severe loss of cartilage in his left shoulder, resulting in a shoulder replacement, loss of range of motion, loss of functional use of his arm, and severe and permanent pain and suffering. (Id. ¶ 6.)

Defendant McKinley Medical L.L.C. ("McKinley LLC") allegedly manufactured the pain pump that was used in Evans' surgery. (Id. ¶¶ 16, 24; Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 2-3.) The pain pump was part of two product lines known commercially as the

Accufuser and BeeLine. (Compl. ¶ 5; Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 1-3.)

During the summer of 2006, Curlin, which is a wholly-owned subsidiary of Moog, acquired certain assets of McKinley LLC. On 14 July 2006, Moog and Curlin entered into a Merger Agreement with McKinley LLC and McKinley Medical Corporation ("McKinley Corporation"). (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement.) Pursuant to the terms of the Merger Agreement, McKinley LLC would transfer the Accufuser and BeeLine product lines to McKinley Corporation, a subsidiary of McKinley LLC created solely for the purpose of the asset transfer. Thereafter, Curlin would merge with McKinley Corporation and acquire the Accufuser and BeeLine product lines. (Id. §§ 2.1, 2.3.) Curlin agreed to "continue at least one significant historic business line" of McKinley Corporation, and McKinley LLC agreed to indemnify Curlin and Moog for any liability arising from pain pump products manufactured or sold prior to the closing date. (Id. §§ 4.6, 5.14, 8.2(a)(iv).)

During the due diligence period, McKinley LLC informed Curlin and Moog that in early 2006, it received one report from a pain pump distributor regarding chondrolysis. (W. Leonard Dep., DE # 73-6, at 42:5-43:13.) No lawsuits or claims based on the use of the pain pumps were pending against McKinley LLC at the time that the Merger Agreement was executed. (Id. at 50:5-12.)

On 23 August 2006, McKinley LLC and McKinley Corporation executed a General Assignment, Conveyance, and Assumption Agreement ("Assignment"). Pursuant to the Assignment, McKinley LLC conveyed all tangible and intangible assets of the Accufuser and BeeLine product lines, including accounts receivables, tangible personal property, inventory, contracts and intellectual property, to McKinley Corporation. (D. DaCunzo Aff., Ex. 2, DE # 74,

at 1 & Ex. A.) McKinley LLC also conveyed certain liabilities such as accounts payable and other contractual duties. (Id. at 1 & Ex. B.)

Upon conveyance of the assets, Curlin merged with McKinley Corporation and acquired the Accufuser and BeeLine product lines. As of 23 August 2006, McKinley Corporation ceased to exist as a corporate entity. (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement §§ 2.1, 2.3; R. Olivieri Dep., DE # 73-4, at 14:3-11.)

McKinley LLC received Moog stock in consideration for the merger of Curlin and McKinley Corporation. (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement § 2.4; S. Insalaco Decl., DE # 83-1, ¶ 9.) The stock received was significantly less than 1% of the outstanding shares of Moog. (S. Insalaco Decl., DE # 83-1, ¶ 9.)

Following the merger between Curlin and McKinley Corporation, business associated with the Accufuser and BeeLine pain pumps was transferred from McKinley LLC's headquarters in Wheat Ridge, Colorado to Curlin's headquarters in Huntington Beach, California. (R. Olivieri Dep., DE # 73-4, at 37:22-38:2; Mem. Supp. Moog & Curlin's Mot. Summ. J., DE # 78, at 6.) The Accufuser and BeeLine manufacturing companies, suppliers and customers remained the same. (R. Olivieri Dep., DE # 73-4, at 37:11-15; R. Hoffman Dep., DE # 73-5, at 189:9-24.) Curlin hired twelve of McKinley LLC's employees, ten of whom left Curlin within the first year. (R. Olivieri Dep., DE # 73-4, at 19:12-20:25; 38:3-39:5.)

McKinley LLC retained its corporate existence and continued to sell other medical devices, including the Walkmed product line. (Id. at 16:21-17:7; W. Leonard Dep., DE # 73-6, at 24:15-18.) In May 2007, McKinley LLC sold the Walkmed product line. (W. Leonard Dep., DE # 73-6, at 22:7-23:2.) McKinley LLC no longer conducts commercial business, although it

3

remains a corporate entity. (Id. at 46:2-12.)

On 23 April 2009, Evans and his wife, Diana Evans ("plaintiffs"), filed suit against Moog, Curlin, McKinley LLC and three other defendants in the United States District Court for the Eastern District of New York. The case was transferred to this district in November 2009. Plaintiffs have asserted claims for negligence, negligence per se, strict products liability, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, fraud and deceit, and loss of consortium. The other three defendants were subsequently dismissed from the lawsuit, so that Moog, Curlin and McKinley LLC are the only remaining defendants. Moog and Curlin filed a motion for summary judgment on 18 August 2010. Plaintiffs filed a response on 27 September 2010. In their motion for summary judgment, Moog and Curlin argue that they are not liable to plaintiffs as successors in interest to McKinley LLC because the transactions at issue constitute an asset purchase, which cannot be the basis for successor liability.

## II. DISCUSSION

Summary judgment is proper only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.,

4

477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Id. at 255.

The court notes that at least three other courts have issued decisions addressing similar facts and legal issues in cases where McKinley LLC, Curlin and Moog were parties. See Gilmore v. DJO Inc., No. 2:08-CV-1252-HRH (D. Ariz. Sept. 3, 2010) (unpublished) (DE # 82); Bregman v. DJO, LLC, No. 09-CV-5894 (El Paso Cnty. Colo. June 18, 2010) (unpublished) (DE # 73-8); Cox v. DJO, LLC, No. 07-1310-AA, 2009 WL 3855084 (D. Or. Nov. 16, 2009) (DE # 73-7). In each of these cases, the court granted Moog and Curlin's motion for summary judgment on the issue of successor liability. While these decisions are not binding authority, the court has considered them and finds their reasoning to be persuasive. Nevertheless, the court has fully considered the arguments made by the parties in this case and has conducted its own research of the relevant law in reaching its decision.

Under North Carolina law,[1] when a corporation purchases all, or substantially all, of the assets of another corporation, the purchasing corporation is generally not liable for the selling corporation's debts or liabilities. Budd Tire Corp. v. Pierce Tire Co., Inc., 370 S.E.2d 267, 269 (N.C. Ct. App. 1988). However, exceptions exist where:

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors, or; (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers.

---

[1] Plaintiffs, Moog and Curlin all agree that North Carolina law is applicable to this case. (See, e.g., Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 11; Mem. Supp. Moog & Curlin's Mot. Summ. J., DE # 78, at 8-9.)

5

Id.; see also Morgan v. Cavalier Acquisition Corp., 432 S.E.2d 915, 926 (N.C. Ct. App. 1993).

Plaintiffs contend that all four exceptions to the traditional rule apply to this case. The essence of plaintiffs' argument is that the merger between Curlin and McKinley Corporation constitutes a merger between Moog/Curlin and McKinley LLC because Moog/Curlin acquired and continued McKinley LLC's Accufuser and BeeLine product lines. (See Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 2.)

A.  Express or Implied Assumption of Liability

Here, Moog and Curlin did not expressly or impliedly agree to assume liability arising from pain pump products manufactured and sold by McKinley LLC prior to the merger that occurred in 2006 between McKinley Corporation and Curlin. To the contrary, the Merger Agreement expressly and specifically identifies the existing liabilities that were transferred to McKinley Corporation and subsequently assumed by Curlin:

> Prior to the Closing Date, and on and subject to the terms and conditions of this Agreement, [McKinley Corporation] shall assume and become responsible for all of the Transferred Liabilities. [McKinley Corporation] will not assume or have any responsibility, however, with respect to any other obligation or liability of [McKinley LLC] not included within the definition of Transferred Liabilities.

(D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement § 2.2.) Similarly, the Assignment provides that McKinley Corporation "is not assuming any liabilities of [McKinley LLC] of any kind (the 'Retained Liabilities') other than the Transferred Liabilities." (Id., Ex. 2, DE # 74, at 1.) "Transferred Liabilities" include "[a]ll liabilities and obligations for future performance under the Contracts set forth on Schedule 1.1(c)" and "[t]he Accounts Payable." (Id., Ex. 3, DE # 75, Merger Agreement Schedule 1.1(f).) Liabilities arising from pain pumps manufactured by McKinley LLC were not included as "Transferred Liabilities," and, as a result, McKinley

6

Corporation, and ultimately Curlin, did not assume them. (Id., Ex. 3, DE # 75, Merger Agreement Schedule 1.1(f); Ex. 2, DE # 74, at 1 & Ex. B.) To further this intent of the parties, McKinley LLC agreed to indemnify Moog and Curlin for any liability arising from "products manufactured or sold prior to the Closing" date of the Merger Agreement. (Id., Ex. 3, DE # 75, Merger Agreement § 8.2(a)(iv).)

Plaintiffs argue that the indemnification provision in the Merger Agreement is somehow evidence of an implied agreement by Moog and Curlin to assume liability. (Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 19.) Plaintiffs cite no authority in support of this proposition, and the court finds that their argument is without merit. If the parties had intended for Moog and Curlin to assume liability for claims arising out of the use of pain pumps prior to the merger, they would not have included a provision in the Merger Agreement that required McKinley LLC to obtain liability insurance for products sold prior to closing. (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement § 5.19(a) & Schedule 3.16.)

Plaintiffs also emphasize that there is no "explicit statement" in the Merger Agreement that "Moog and Curlin would not accept any liability for injuries alleged to have occurred from sales of pain pumps prior to the merger[.]" (Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 19 n.2.) Be that as it may, when the Merger Agreement is read as a whole, the liability and indemnity provisions have unambiguous and consistent purposes. As a result, plaintiffs have failed to show Moog and Curlin expressly or impliedly agreed to assume liability in this case.

B.  *De Facto* Merger

Next, plaintiffs argue that there was a merger between McKinley LLC and Moog/Curlin. Although it is undisputed that Curlin merged with McKinley Corporation, plaintiffs nonetheless

7

suggest that this transaction constitutes a *de facto* merger between McKinley LLC and Moog/Curlin because Moog/Curlin continued the pain pump business of McKinley LLC with "substantially the same employees, the same means of production, the same product names (BeeLine and Accufuser), and substantially the same customer base as existed under McKinley LLC." (Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 20.)

Here, the parties have not pointed to any cases in which the North Carolina courts have interpreted the *de facto* merger exception. However, plaintiffs urge the court to consider a case where the Fourth Circuit Court of Appeals interpreted Virginia law regarding this exception.[2] Plaintiffs contend that Virginia successor liability law is virtually identical to that of North Carolina. However, even if the standard suggested by plaintiffs is applied to this case, the court finds that the merger which took place was not between McKinley LLC and Moog/Curlin but rather between McKinley Corporation and Curlin. The Merger Agreement itself as well as the following undisputed facts make it clear that a merger did not occur between McKinley LLC and Moog/Curlin. It is undisputed that (1) McKinley LLC continued to exist as a separate entity and

---

[2] In this case, the Fourth Circuit Court of Appeals stated that most jurisdictions consider the following four elements in deciding whether there has been a *de facto* merger:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
> (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Acme Boot v. Tony Lama Interstate Retail Stores, Inc., 929 F.2d 691 (Table), Nos. 90-2621, 90-2630, and 90-2637, 1991 WL 39457, at *3 (4th Cir. Mar. 26, 1991) (quoting Bud Antle, Inc. v. E. Foods, Inc., 758 F.2d 1451, 1457-58 (11th Cir. 1985)); see also Blizzard v. Nat'l R.R. Passenger Corp., 831 F. Supp. 544, 547 (E.D. Va. 1993); Crawford Harbor Assocs. v. Blake Constr. Co., Inc., 661 F. Supp. 880, 884 (E.D. Va. 1987).

to sell other products after the merger; (2) the companies had substantially different ownership and management; (3) Curlin acquired only some of McKinley LLC's assets; and (4) Curlin operates primarily out of Huntington Beach, California, while McKinley LLC operated out of Wheat Ridge, Colorado. (S. Insalaco Decl., DE # 83-1, ¶ 3; R. Olivieri Dep., DE # 73-4, at 37:22-38:2.)

Curlin acknowledges that it hired approximately twelve of McKinley LLC's employees, but this was a relatively small number of McKinley LLC's overall workforce, and few of these employees were still employed by Curlin one year after the merger. (R. Olivieri Dep., DE # 73-4, at 19:12-20:25; 38:3-39:5.) Management of Moog/Curlin was also entirely different from that of McKinley LLC. None of the officers or directors of McKinley LLC became officers or directors of Moog/Curlin. (S. Insalaco Decl., DE # 83-1, ¶ 3.)

Furthermore, McKinley LLC did receive Moog stock in consideration for the merger of Curlin and McKinley Corporation, but the stock received was significantly less than 1% of the outstanding shares of Moog. (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement § 2.4; S. Insalaco Decl., DE # 83-1, ¶ 9.) Thus, there is not a continuity of stockholders between McKinley LLC and Moog. The court concludes that there was no *de facto* merger between McKinley LLC and Moog/Curlin.[3]

---

[3] The court also notes that the cases cited by plaintiffs are distinguishable. For example, plaintiffs argue that the *de facto* merger exception may apply where the purchaser assumed accounts payable and receivable, citing Kaiser Foundation Health Plan of the Mid-Atlantic States v. Clary & Moore, 123 F.3d 201 (4th Cir. 1997) (applying Virginia law). However, plaintiffs fail to recognize that the Fourth Circuit Court of Appeals focused on the "unique circumstances surrounding the transfer of the accounts receivable" and on the fact that the transfer was done under "suspicious circumstances." Id. at 208. Similar unique circumstances do not exist in this case. Furthermore, the appellate court found that it was "clear that there was substantial overlap in the ownership, the officers, and the directors of the two firms . . . ." Id. at 206. As the court has already discussed, the companies involved in this case had substantially different ownership and management. The other cases cited by plaintiffs are similarly distinguishable on their facts. See, e.g., Greater Potater Harborplace, Inc. v. Jenkins, 935 F.2d 267 (Table), No. 90-1462, 1991 WL 89830,
(continued...)

C.  Fraud

Next, plaintiffs argue that McKinley LLC and Moog entered into the transactions at issue, at least in part, in an effort to avoid liability for damages related to the use of the Accufuser and BeeLine pain pumps. See Dublin v. UCR, Inc., 444 S.E.2d 455, 463 (N.C. Ct. App. 1994) ("[W]hen a corporation purchases all or substantially all of the assets of another corporation under circumstances indicating a purpose to avoid the claims of creditors, the transferee is liable for the claims asserted by creditors against the transferor."). However, plaintiffs present no evidence to suggest that McKinley LLC or Moog structured the transactions to avoid liability for damages related to the use of the pain pumps. At the time of the Assignment and the Merger Agreement, it is undisputed that McKinley LLC had received and disclosed one adverse report regarding a case of chondrolysis. (W. Leonard Dep., DE # 73-6, at 42:5-43:13.) No claims or lawsuits had been filed against McKinley LLC, and no evidence suggests that any of the parties to the transactions at issue had knowledge of future litigation and thus conveyed the Accufuser and BeeLine pain pumps to avoid liability. (Id. at 50:5-12.) Rather, according to undisputed deposition testimony, McKinley LLC and Moog structured the transaction to avoid detrimental tax consequences arising from the conveyance of McKinley LLC assets. (R. Olivieri Dep., DE # 73-4, at 33-34, 63, 82.)

Plaintiffs nonetheless take the position that Curlin and Moog cannot deny their involvement in a merger with McKinley LLC because they characterized the relevant transactions as a merger between Moog and McKinley LLC in order to gain beneficial tax

---

³(...continued)
at *5 (4th Cir. May 31, 1991) ("The owners, officers, and managers of Thrasher's, Inc. became the owners, officers, and managers of Greater Potater and related corporations.").

consequences. (See Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 23-27.) Regardless of the way the transactions may have been represented to the Internal Revenue Service, the fact remains that no merger occurred between McKinley LLC and Moog/Curlin, and plaintiffs offer no evidence to support their assertion that the assignment of assets and subsequent merger were fraudulent or structured to avoid liability.

D.      Mere Continuation

The evidence also does not support a finding that Moog or Curlin is a "mere continuation" of McKinley LLC. Budd Tire Corp., 370 S.E.2d at 269. "'[A] corporate successor is the continuation of its predecessor if only one corporation remains after the transfer of assets and there is identity of stockholders and directors between the two corporations.'" G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc., 481 S.E.2d 674, 680 (N.C. Ct. App. 1997) (quoting Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp., 195 B.R. 716, 724 (N.D. Ind. 1996)); see also Bryant v. Adams, 448 S.E.2d 832, 839 (N.C. Ct. App. 1994). "In determining whether the purchasing corporation is a 'mere continuation' of the old corporation, factors such as inadequate consideration for the purchase, or a lack of some of the elements of a good faith purchaser for value may be considered." Bryant, 448 S.E.2d at 839; see also G.P. Publ'ns, 481 S.E.2d at 680.

Here, no continuity of management, directors or shareholders exists between McKinley LLC and Moog/Curlin. As previously mentioned, McKinley LLC did receive Moog stock in consideration for the merger of Curlin and McKinley Corporation, but the stock received was significantly less than 1% of the outstanding shares of Moog. (D. DaCunzo Aff., Ex. 3, DE # 75, Merger Agreement § 2.4; S. Insalaco Decl., DE # 83-1, ¶ 9.) Thus, there is not an identity of stockholders between McKinley LLC and Moog. Furthermore, there is no evidence to suggest

11

that the stock that McKinley LLC received in exchange for the assignment of assets constituted inadequate consideration. In addition, none of the officers or directors of McKinley LLC became officers or directors of Moog/Curlin. (S. Insalaco Decl., DE # 83-1, ¶ 3.)

Importantly, McKinley LLC retained assets after the execution of the Assignment and Merger Agreement and distributed the Walkmed pain pumps until May 2007. The fact that McKinley LLC no longer conducts any commercial business is irrelevant to the question of whether Moog or Curlin is a mere continuation of McKinley LLC. McKinley LLC remains an existing, separate corporate entity and an active defendant in this case.[4]

In summary, the court concludes that Moog and Curlin cannot be held liable to plaintiffs on the theory of successor liability.

E.  Motion to Seal

Curlin and Moog have filed the affidavit of Daniella DaCunzo in support of their motion for summary judgment. They seek leave to file two of the exhibits to the affidavit under seal. Exhibit 2 (DE # 74) is the Assignment executed by McKinley LLC and McKinley Corporation, and Exhibit 3 (DE # 75) is the Merger Agreement executed by McKinley LLC, McKinley Corporation, Moog and Curlin.

Prior to sealing court documents, a district court must first determine the source of the public's right to access the documents: the common law or the First Amendment. Stone v. Univ.

---

[4] Plaintiffs also suggest that this court should apply the "continuity of enterprise" theory in determining whether a successor corporation is liable for the debts of the predecessor corporation. (See Pls.' Mem. Opp'n Mot. Summ. J., DE # 83, at 17-18.) This approach considers a series of factors in determining whether one corporation is the successor to another: "(1) retention of the same employees; (2) retention of the same supervisory personnel; (3) retention of the same production facilities in the same location; (4) production of the same product; (5) retention of the same name; (6) continuity of assets; (7) continuity of general business operations; and (8) whether the successor holds itself out as the continuation of the previous enterprise." United States v. Carolina Transformer Co., 978 F.2d 832, 838 (4th Cir. 1992). Even if this theory were applied to the present case, the court's conclusion would remain the same.

of Md., 855 F.2d 178, 180 (4th Cir. 1988). The Fourth Circuit Court of Appeals has determined that the First Amendment right of access attaches to documents filed in support of a summary judgment motion. See Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). Where the First Amendment guarantees access to documents, such access "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855 F.2d at 180.

In weighing these competing interests, a court must comply with the procedure set forth by In re Knight Publishing Company, 743 F.2d 231 (4th Cir. 1984). First, the district court must give the public adequate notice and a reasonable opportunity to be heard, which can be accomplished by docketing the motion to seal reasonably in advance of deciding the issue. Id. at 235. The court must consider less drastic alternatives to sealing, and if it decides to seal documents, it must "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." Id.; see also Stone, 855 F.2d at 181.

In furtherance of this directive from the Fourth Circuit Court of Appeals, this district has promulgated local rules and procedures related to the filing of sealed material. See Local Civil Rule 79.2; Eastern District of North Carolina Electronic Case Filing Administrative Policies and Procedures Manual § T(1)(a) (rev. Jan. 25, 2010). The pending motion to seal does not fully address how the requests to seal overcome the First Amendment presumption to access or the reasons why alternatives to sealing are inadequate, as required by the court's policies and procedures. See id. § T(1)(a)1.

Here, Moog and Curlin contend that the exhibits should be sealed because they have been

13

identified as "confidential" pursuant to the Stipulated Qualified Protective Order with Modifications that was entered in this case. (DE # 47.) The fact that the parties agreed to a protective order which provides for the filing of confidential materials under seal "is insufficient to demonstrate a compelling government interest or that sealing [an] entire document is narrowly tailored to further that interest." Roberson v. Paul Smith, Inc., Nos. 5:07-CV-284-F; 5:08-CV-40-F, 2011 WL 683900, at *12 (E.D.N.C. Feb. 18, 2011). In addition, the fact that the documents at issue have been filed under seal in another case in this district does not absolve the court of its duty to make the determinations required under Knight.

Furthermore, Moog and Curlin do not show the particular harm that will result if the documents are disclosed. At most, they allege that the documents contain "confidential and proprietary business information" relating to "the sale of assets between the parties, as well as the inner workings of the sale and the companies involved, and the financial details and ramifications of the sale." (Mem. Supp. Moog & Curlin's Mot. Seal, DE # 77, at 1-2.) Moog and Curlin also generally allege that the disclosure of the documents "will be harmful to the defendants' business interests, and potentially cause them competitive harm." (Id. at 3 (emphasis added).) Although the court does not seek to make light of Moog and Curlin's interest in the confidentiality of their business records, this broad, cursory statement of the alleged harm that they may suffer if the court does not seal the exhibits at issue is based upon speculation and conjecture. Such ambiguity fails to overcome the public's presumptive right to access judicial documents and records.

The court finds the following language in a recent decision from another district court in the Fourth Circuit to be particularly instructive:

14

> [N]one of the [confidentiality] interests advanced . . . are 'appropriate' to be weighed in deciding whether to seal materials to which the public would otherwise have a right of access guaranteed by the First Amendment. In other words, [a party's] asserted private confidentiality interests, however legitimate, simply do not figure in the Court's analysis where the First Amendment guarantee is implicated. Consequently, although this Court, as previously noted, certainly does not seek to make light of [the party's] interest in the confidentiality of its business records, the utter lack of any asserted compelling governmental or private interest in sealing the exhibits at issue here effectively ends the First Amendment analysis, and leads inevitably to the conclusion that . . . the instant motion would have to be denied and the documents would have to remain in the public record in this case.

Level 3 Comm'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 591 (E.D. Va. 2009) (internal citations omitted). As a result, Moog and Curlin's motion to seal will be denied.[5]

### III. CONCLUSION

The court has considered all of the parties' arguments, the record of this matter, and the relevant legal precedent, and has concluded that there is no genuine dispute of material fact. Therefore, Moog and Curlin are entitled to judgment as a matter of law, and their motion for summary judgment (DE # 72) is GRANTED. Plaintiffs' claims against Moog and Curlin are DISMISSED WITH PREJUDICE. Moog and Curlin's motion to seal (DE # 76) is DENIED.

This 14 March 2011.

_____
W. Earl Britt
Senior U.S. District Judge

---

[5] The court also notes that Exhibit 2, the Assignment, was filed as an unsealed exhibit by plaintiffs in September 2010, and Moog and Curlin have not raised any objections to this filing. (See S. Insalaco Decl., DE # 83-1.)

15